# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

WILLIAM C. (COREY) ELLENBURG,
and DIANE M. ELLENBURG,

    Plaintiffs,

vs.                                                                                     No. CV 17-00901 RB-KBM

ALLSTATE INSURANCE COMPANY,
LEWIS, BRISBOIS, BISGAARD & SMITH LLP,
and RYAN T. SAYLOR, ESQUIRE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

As courts of limited jurisdiction, federal courts cannot adjudicate disputes of state law, except when there is complete diversity of citizenship. Knowing this, plaintiffs who prefer the state forum sometimes join non-diverse defendants, against whom the plaintiffs have no reasonable basis of recovery, in order to defeat federal jurisdiction. To prevent plaintiffs from getting away with this tactical maneuver, federal courts recognize the concept of fraudulent joinder, which allows them to dip into the merits of the plaintiff's claims against non-diverse defendants to see if those claims have any "reasonable basis" of success.

Defendant Allstate has accused the plaintiffs of fraudulently joining the non-diverse defendants, bringing the jurisdictional issue of fraudulent joinder before the Court. Because the plausibility of the claims against the non-diverse defendants turns on how New Mexico should reconcile its desire to safeguard zealous attorney advocacy with its desire to promote ethical practices in the insurance industry, a problem that requires deep thinking on issues of statewide importance, New Mexico courts should be the ones to decide this case.

## BACKGROUND

William (Corey) Ellenburg owned a Matco Tool Distributorship, through which he sold Matco tools. (*See* Doc. 1, Ex. 1 at 2.) Mr. Ellenburg kept his Matco inventory in a van that he leased, and, to protect himself in the event something happened to the van, Mr. Ellenburg purchased coverage through Allstate Insurance Company. (*Id.*) The insurance coverage protected not only Mr. Ellenburg, but also Diane Ellenburg, who had invested in the Matco distributorship. (*Id.*)

Sometime in January 2017, Mr. Ellenburg's Matco van was stolen. (*Id.* at 3.) It was later discovered in Santa Fe County, New Mexico, burned to the ground. (*Id.*) The Matco tools and equipment inside were gone. (*Id.*)

Mr. Ellenburg promptly reported the loss of the Matco van to Allstate and filed an insurance claim. (*Id.*) In response to Mr. Ellenburg's claim, Allstate hired Ryan T. Saylor, an attorney at the law firm of Lewis, Brisbois, Bisgaard & Smith LLP (LBBS), to conduct an examination under oath (EUO) with Mr. Ellenburg. (*Id.* at 4.) During the EUO, Mr. Saylor allegedly engaged in oppressive and intimidating tactics, such as misrepresenting the terms of the policy. (*See id.* at 5–6.)

Believing themselves to be the victims of a profit-maximizing scheme by Allstate designed to coerce Allstate's clients to settle their claims for a fraction of their worth, Mr. and Ms. Ellenburg (together, the "Ellenburgs") sued Allstate, Mr. Saylor, and LBBS in New Mexico state court for statutory violations—including violations of the Trade Practices and Frauds article (TPFA) of the New Mexico insurance code, N.M. Stat. Ann. §§ 59A-16-1–30—and for common law violations. (*See id.* at 18–26.) Relevant to this case, the Ellenburgs sued Mr. Saylor and

LBBS for violating the TPFA under the theory that the two acted as Allstate's agents in carrying out Allstate's illegal coercion scheme. (*See id.* at 5–6, 24–26.)

At first blush, the Ellenburgs properly chose the state court forum because there was no issue of federal law, (*see id.*), nor was there complete diversity of citizenship as the Ellenburgs, Mr. Saylor, and LBBS were all New Mexico citizens, (*see* Doc. 1 at 4). However, Allstate removed the case to federal court, arguing that New Mexico's case law unequivocally precludes attorneys from being sued under any of the Ellenburgs' theories of liability; and thus, Mr. Saylor and LBBS must have been fraudulently joined in the lawsuit. (*See id.*) With Mr. Saylor and LBBS out of the lawsuit, there would be complete diversity between plaintiffs and defendants (and thus potential federal diversity jurisdiction) since Allstate is a citizen of Illinois. (*See id.*)

The issue before the Court is whether Mr. Saylor and LBBS were indeed fraudulently joined so that Allstate appropriately removed the case to federal court.

**LEGAL STANDARD**

When complete diversity does not exist between plaintiffs and defendants in a lawsuit predicated solely on issues of state law, a federal court normally has no jurisdiction to hear the case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts have jurisdiction only when such jurisdiction is authorized by Constitution and statute). But if the lack of complete diversity is the result of a plaintiff's fraudulent joinder of a non-diverse party, then a federal court has diversity jurisdiction over the case (assuming the amount in controversy requirement is satisfied), and a defendant may properly remove the case to federal court. *See Am. Nat. Bank & Tr. Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991).

A defendant who decides to remove a case without complete diversity to federal court on the theory of fraudulent joinder must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (citation omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual *and legal issues* must be resolved in favor of the plaintiff." *Id.* (citations omitted) (emphasis added). This is a more exacting standard than the one used for dismissing a claim under Fed. R. Civ. P. 12(b)(6). *See Montano v. Allstate Indem.*, 211 F.3d 1278, 1278 (10th Cir. 2000).

As defendants have not alleged actual fraud, the Court turns its attention to the second means of demonstrating fraudulent joinder, which requires the Court to determine whether there is a "reasonable basis" to believe that the plaintiff could recover against the non-diverse defendant in state court. *See Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *see also Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1255 (D.N.M. 2014) (concluding that the Tenth Circuit would likely adopt the Fifth Circuit's analysis here). A plaintiff has a reasonable basis for recovery against a non-diverse defendant if the plaintiff's claim is not wholly insubstantial and frivolous. *See Montano*, 211 F.3d at 1278 (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–53 (3rd Cir. 1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.")).

If the plaintiff's claim against the non-diverse defendant is wholly insubstantial and frivolous, such that there is no reasonable basis for the plaintiff to recover against the non-diverse defendant in state court, then the federal court may conclude that the non-diverse

defendant was fraudulently joined and retain jurisdiction over the case. *See Cuevas*, 648 F.3d at 249. On the other hand, if there is a reasonable basis for recovery against the non-diverse defendant, then there is no diversity jurisdiction and the case must be remanded. *See id.*

**DISCUSSION**

The debate before the Court boils down to one question: did the Ellenburgs adequately plead a reasonable basis for recovering in New Mexico state court against Mr. Saylor or LBBS? To answer that question, the Court begins by examining New Mexico's pleading standard.

Unlike the federal plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), New Mexico courts have resolutely maintained the notice-pleading standard, which requires only that a plaintiff allege enough facts to put the defendant on notice of the claims against him. *See Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1244 (N.M. 2014); NMRA, Rule 1-008(A). The Ellenburgs have alleged that an unfortunate event covered under their policy occurred, and that rather than pay the Ellenburgs, Allstate used Mr. Saylor and LBBS to pressure the Ellenburgs to settle their claim. In acting for Allstate, the Ellenburgs contend, Mr. Saylor and LBBS were Allstate's agents in carrying out an illegal profit-maximizing scheme, one that contravened the TPFA of the New Mexico insurance code. Clearly, the Ellenburgs' complaint was sufficient to put Mr. Saylor and LBBS on notice that they were being accused of violating the TPFA, among other things. Thus, the Court must consider whether Mr. Saylor or LBBS may actually be sued under the TPFA.

The TPFA is a part of New Mexico's insurance code. N.M. Stat. Ann. §§ 59A-16-1–30. The purpose of the TPFA, and the insurance code as a whole, is to "promote ethical settlement practices within the insurance industry." *See Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 74 (N.M. 2004). To effectuate its purpose, the TPFA prohibits certain unfair claims practices, including

"misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue" and "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." N.M. Stat. Ann. § 59A-16-20. And to give teeth to its provisions, the TPFA authorizes a private right of action by any person covered under the TPFA who has suffered damages to sue "an insurer or agent" for violations of the TPFA. N.M. Stat. Ann. § 59A-16-30.

Allstate claims that the Ellenburgs cannot sue Mr. Saylor or LBBS under the TPFA because New Mexico's case law precludes attorneys from being sued under the statute. (*See* Doc. 18 at 1.) In reaching this conclusion, Allstate relies on *Hovet v. Allstate*, which holds that "defense attorneys may not be named as party-defendants in claims brought under the [TPFA]," *Hovet*, 89 P.3d at 77, and *Garcia v. Rodey*, which holds that "an attorney has no duty . . . to protect the interests of a non-client adverse party . . . .," *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 750 P.2d 118, 122 (N.M. 1988). (*See id.*) The problem for Allstate, however, is that *Hovet* and *Garcia* may have been limited to instances where the defendant-attorney is sued for his role in an *adversarial* matter. Here, the Ellenburgs have plausibly alleged that they are suing Mr. Saylor for what he did outside of an adversarial context, before Allstate made a determination about the Ellenburgs' claim, and outside of any litigation or arbitration proceeding. *See Durham v. Guest*, 171 P.3d 756, 759 (N.M. Ct. App. 2007), *rev'd on other grounds*, 204 P.3d 19 (N.M. 2009) (holding that arbitration is an adversarial proceeding for purposes of the TPFA).

The adversarial-not adversarial distinction is potentially significant because *Garcia*'s holding—which *Hovet* relied on—was premised on the idea that third-parties could not justifiably rely on adverse attorneys, and that subjecting attorneys to suit from adverse parties

6

would significantly impair attorneys' abilities to advocate for their clients. *See Garcia*, 750 P.2d at 122. These considerations may not carry the same force in instances where, as here, the attorney is assisting an insurance company in a routine investigation of a claim, prior to any disputes. For example, a court may decide that a client of an insurance company could reasonably rely on the company's attorney when that attorney is facilitating the claim through an EUO outside of any arbitration or litigation proceeding. Likewise, a court could decide that holding said attorney to the standards set in the TPFA would not significantly impair the attorney's ability to advocate for his client. Even with *Hovet* and *Garcia* on the books, then, a court could rationally conclude that an attorney playing the role of claim investigator is acting outside the adversarial context and subject to suit under the TPFA.

Nearly three weeks after briefing was complete on the issue of fraudulent joinder, Allstate filed an unauthorized surreply brief, disguised as a "notice of errata," to add another unconvincing argument as to why the Ellenburgs were fraudulently joining Mr. Saylor and LBBS. (*See* Doc. 27 at 1–2.) This time, Allstate claimed that because Mr. Saylor was not an "adjuster" under § 59A-12-2 of the insurance code, Mr. Saylor could not be sued through the TPFA. (*See id.*) Though Allstate is probably right that Mr. Saylor is not an adjuster as defined in § 59A-12-2, that eliminates only one avenue for characterizing Mr. Saylor as an "insurer" subject to the TPFA. *See Martinez v. Cornejo*, 208 P.3d 443, 448 (N.M. Ct. App. 2009) (holding that adjusters, as defined in § 59A-12-2, are "insurers" subject to liability under the TPFA). The TPFA, however, allows a private cause of action against both insurers *and agents*. N.M. Stat. Ann. § 59A-16-30. The Ellenburgs have plausibly alleged that Mr. Saylor was an "agent" of Allstate. *See Agent*, Black's Law Dictionary (8th ed. 2004) (defining "agent" as "[o]ne who is authorized to act for or in place of another; a representative"). Thus, even if Mr. Saylor was not

7

an insurer because he was not an adjuster, a plain reading of the TPFA still suggests that Mr. Saylor could be sued as an agent of Allstate.

Further the Court's proposed plain reading of the TPFA—allowing suit against an attorney who acts as an agent of an insurance company by conducting routine, non-adversarial claim investigations—makes sense given the case law and the TPFA's goal of promoting ethical settlement practices within the insurance industry. *See Hovet*, 89 P.3d at 74. After all, if people assisting an insurance company in facilitating a claim can be sued in their personal capacities for violating the TPFA, *see Martinez*, 208 P.3d at 449–50, why should such people escape liability because they have law degrees?

Of course, there is no guarantee that a New Mexico court would side with the Ellenburgs. The New Mexico Supreme Court did say that "[t]he private right of action under the Insurance Code is limited by statute to violations by insurance companies and their agents; attorneys are not included." *See Hovet*, 89 P.3d at 77. This language could mean that, even if someone is really more agent than attorney, that person's law degree gives them blanket immunity from TPFA liability. Alternatively, a New Mexico court could decide that an attorney conducting an EUO is like an attorney representing an insurance company in an arbitration proceeding, which also exempts that attorney from TPFA liability. The question for this Court, however, is not whether a New Mexico court will or should rule for Allstate. In a more nuanced way, the question is whether a New Mexico court could ever rule for the Ellenburgs. Because there is a reasonable chance that the Ellenburgs could succeed on their TPFA claim against Mr. Saylor, the Court remands the case to state court.

## CONCLUSION

There are two open questions in this case. The first question is whether attorneys like Mr. Saylor are acting in an adversarial context when they administer EUOs for insurance companies outside any litigation or arbitration proceedings. If New Mexico courts determine that such attorneys are acting in an adversarial capacity, then those attorneys cannot be sued under the TPFA.

If, however, New Mexico courts determine that those attorneys are *not* acting in an adversarial capacity, then the courts must answer a second question: whether attorneys acting in a non-adversarial context can be sued under the TPFA. Though there is language in New Mexico cases—such as *Hovet*—that suggests attorneys should always be immune from TPFA liability, that language is sufficiently ambiguous to allow courts to come out either way on the issue.

Given the unanswered questions, the Ellenburgs have a reasonable basis to succeed on their claims against the non-diverse parties. Accordingly, the Court **grants** the Ellenburgs' motion to remand (Doc. 11) and remands the case to the First Judicial District, County of Santa Fe, State of New Mexico.

The Court **dismisses** the remaining pending motions in this case, (Docs. 9 and 28), as the Court has no jurisdiction to resolve those issues.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**